O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RICHARD J. ROSAS,                          )   Case No.  CV 13-2756-SP
                                           )
                   Plaintiff,              )
                                           )
          v.                               )   MEMORANDUM OPINION AND
                                           )   ORDER
                                           )
CAROLYN W. COLVIN, Acting                  )
Commissioner of Social Security            )
Administration,                            )
                                           )
                   Defendant.              )
_____        )

## I.

## INTRODUCTION

On May 2, 2013, plaintiff Richard J. Rosas, proceeding pro se, filed a

complaint against defendant, the Commissioner of the Social Security

Administration ("Commissioner"), seeking a review of a denial of disability

insurance benefits ("DIB") and Supplemental Security Income ("SSI").  Both

plaintiff and defendant have consented to proceed for all purposes before the

assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The court deems the

matter suitable for adjudication without oral argument.

Plaintiff presents four issues for decision:  (1) whether plaintiff was

accorded due process at his hearing; (2) whether the ALJ properly considered the opinion of plaintiff's treating and examining physicians; (3) whether the ALJ properly relied on the testimony of the vocational expert ("VE"); and (4) whether the ALJ properly discounted plaintiff's credibility.[1]   Memorandum in Opposition to Defendant's Motion to Dismiss ("P. Mem.") at 1-3; Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-8; Memorandum in Reply to Defendant's Answer ("Reply") at 2-3.

Having carefully studied the parties' papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ accorded plaintiff a fair hearing, properly rejected the opinion of plaintiff's treating physician, properly relied on the VE's testimony, and properly discounted plaintiff's credibility.   Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-five years old on his corrected alleged disability onset date,[2] completed school through the ninth grade.   *Id*. at 47-48, 151, 163.   His

---

[1]   On January 8, 2014, plaintiff submitted a Memorandum in Opposition to Defendant's Motion to Dismiss, which this court construes as a Memorandum in Support of Plaintiff's Complaint.   Plaintiff raised seven issues in the memorandum and an additional issue in his Reply.   Reading the vague allegations liberally, the court characterizes plaintiff's issues as set forth above.   *See Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006) (district courts must "construe pro se habeas filings liberally") (quoting *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005)).   Normally the court will not consider issues raised for the first time in a reply brief, but because plaintiff's credibility is related to the issue of whether the ALJ properly considered the opinion of his treating physician, an issue raised in the initial brief, the court will address it as well.

[2]   In his applications, plaintiff alleged that his onset of disability date was June 18, 2007.   AR at 151.   The ALJ determined that the correct alleged onset date was

1  past relevant work was as a general building contractor, general engineering

2  contractor, electrician, and arc welder. *Id.* at 220-21.

3        On April 20 and May 13, 2009, plaintiff filed applications for DIB and SSI

4  due to, inter alia, depression, paranoia, back injury, neck injury, carpal tunnel,

5  asbestos cancer, and post traumatic stress disorder ("PTSD"). *Id.* at 124, 132, 155.

6  The Commissioner denied plaintiff's applications, after which he filed for a

7  request for a hearing. *Id.* at 91-97.

8        On August 24, 2010, plaintiff, represented by counsel, appeared and

9  testified at a hearing before the ALJ. *Id.* at 40-88.  The ALJ also heard testimony

10  from Guadalupe Rosas, plaintiff's wife. *Id*. at 77-87.

11        After the hearing, the ALJ ordered an additional psychological evaluation of

12  plaintiff, which was conducted September 24, 2010. *Id.* at 375-82.

13        On December 14, 2010, the ALJ retained the assistance of Howard

14  Goldfarb, a VE, and asked that he complete a set of interrogatories. *Id.* at 216.

15  The VE returned the completed interrogatories on May 5, 2011. *Id*. at 218-26.

16  The ALJ gave plaintiff's counsel the VE's responses and the option of

17  commenting on the responses, submitting more evidence, or submitting cross-

18  interrogatories. *Id*. at 228.  Plaintiff's counsel submitted a cross-interrogatory for

19  the VE, to which he responded on June 8, 2011.[3]  *Id.* at 229, 231, 233.

20        On July 8, 2011, the ALJ denied plaintiff's claims for benefits. *Id.* at 24-35.

21        Applying the well-known five-step sequential evaluation process, the ALJ

22  found, at step one, that plaintiff had not engaged in substantial gainful activity

23  since October 17, 2008, the corrected alleged onset date. *Id.* at 27.

24        At step two, the ALJ found that plaintiff suffered from the following severe

25  _____

26  October 17, 2008, the date plaintiff stopped working. *Id*. at 27.

27     [3]  The VE's response is dated June 8, 2010, but that appears to be a

28  typographical error. *See* AR at 233.

3

1   combination of impairments:  tension headaches; thoracolumbar strain; bipolar

2   disorder; PTSD; and polysubstance abuse.  *Id*.

3          At step three, the ALJ found that plaintiff's impairments, whether

4   individually or in combination, did not meet or medically equal one of the listed

5   impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the

6   "Listings").  *Id.*

7          The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[4] and

8   determined that plaintiff had the RFC to:  lift/carry up to fifty pounds occasionally

9   and twenty-five pounds frequently; stand/walk up to six hours and sit up to six

10  hours in an eight-hour workday; and climb, kneel, crawl, bend, stoop, and balance

11  on a frequent basis.  *Id.* at 28.  The ALJ also found that plaintiff had the ability to

12  perform complex technical work on a frequent basis, and may perform a full range

13  of simple, routine, and repetitive work with occasional contact with supervisors

14  and the general public at a medium stress level.[5]  *Id*. at 28-29.

15         The ALJ found, at step four, that plaintiff was unable to perform his past

16  relevant work.  *Id.* at 33.

17         At step five, the ALJ found that considering plaintiff's age, education, work

18  experience, and RFC, there were jobs that exist in significant numbers in the

19  national economy that plaintiff could perform, including hand packager, day

20  worker, and woodworking polisher.  *Id*. at 33-34.  Consequently, the ALJ

21  _____

22         [4]   Residual functional capacity is what a claimant can do despite existing
    exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,

23  1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step
    evaluation, the ALJ must proceed to an intermediate step in which the ALJ

24  assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486

25  F.3d 1149, 1151 n.2 (9th Cir. 2007).

26

27         [5]   The ALJ specified a stress level of five based on a scale of one to ten, citing
    a dishwasher as an example of one and an air traffic controller as an example of

28  ten.  AR at 28-29.

4

1  concluded that plaintiff did not suffer from a disability as defined by the Social

2  Security Act. *Id.* at 34-35.

3      Plaintiff filed a timely request for review of the ALJ's decision, which was

4  denied by the Appeals Council. *Id.* at 4-6. The ALJ's decision stands as the final

5  decision of the Commissioner.

6                              **III.**

7                    **STANDARD OF REVIEW**

8      This court is empowered to review decisions by the Commissioner to deny

9  benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

10 Administration ("SSA") must be upheld if they are free of legal error and

11 supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59

12 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings

13 are based on legal error or are not supported by substantial evidence in the record,

14 the court may reject the findings and set aside the decision to deny benefits.

15 *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,

16 242 F.3d 1144, 1147 (9th Cir. 2001).

17     "Substantial evidence is more than a mere scintilla, but less than a

18 preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such

19 "relevant evidence which a reasonable person might accept as adequate to support

20 a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

21 F.3d at 459. To determine whether substantial evidence supports the ALJ's

22 finding, the reviewing court must review the administrative record as a whole,

23 "weighing both the evidence that supports and the evidence that detracts from the

24 ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

25 affirmed simply by isolating a specific quantum of supporting evidence.'"

26 *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

27 Cir. 1998)). If the evidence can reasonably support either affirming or reversing

28

                                  5

1  the ALJ's decision, the reviewing court "'may not substitute its judgment for that

2  of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir.

3  1992)).

4                                              **IV.**

5                                    **DISCUSSION**

6  **A.    Plaintiff Received a Fair Hearing**

7          Plaintiff's general overarching argument is that the administrative hearing

8  violated his due process rights because:  (1) he received ineffective assistance of

9  counsel; (2) the ALJ was biased; and (3) the ALJ did not allow plaintiff to review

10  evidence collected after the hearing and did not consider all of the evidence.  P.

11  Mem. at 1-2.  Plaintiff's claims are without merit.

12         "The Supreme Court has held that applicants for social security disability

13  benefits are entitled to due process in the determination of their claims." *Holohan*

14  *v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001) (citing *Richardson v. Perales*,

15  402 U.S. 389, 398, 401-02, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)).  This

16  includes the right to a full and fair hearing. *See McLeod v. Astrue*, 640 F.3d 881,

17  885 (9th Cir. 2011) (as amended) ("The ALJ has a duty to conduct a full and fair

18  hearing."); *Oritz v. Colvin*, No. 12-3348, 2013 WL 2468256, at *1 (C.D. Cal. June

19  6, 2013); *see also Hepp v. Astrue*, 511 F.3d 798, 804 (8th Cir. 2008).

20         **1.    Plaintiff Does Not Have a Right to Counsel**

21         Plaintiff contends that he received ineffective assistance of counsel.  P.

22  Mem. at 1-2.  Specifically, plaintiff argues that his counsel failed to respond to the

23  ALJ's requests, his questions, and the submission of new evidence. *Id.* at 2.

24         A social security claimant does not have a Sixth Amendment right to

25  counsel. *See Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992) ("The

26  Supreme Court has never recognized a constitutional right to counsel at an SSA

27  hearing."); *Holland v. Heckler*, 764 F.2d 1560, 1562 (11th Cir. 1985) (a claimant

28

                                              6

1  has "no *constitutional* right to counsel at a disability benefits hearing") (emphasis

2  in original); *Alvernaz v. Colvin*, No. 13-158, 2014 WL 1338314, at *8 (E.D. Cal.

3  Apr. 2, 2014), *Garth v. Astrue*, No. 11-5592, 2013 WL 257090, at *5 (N.D. Cal.

4  Jan. 23, 2013); *see also* 4 Soc. Sec. Law & Prac. § 46:3 ("A claim of ineffective

5  assistance of counsel during administrative proceedings may not provide a basis

6  for reversing the SSA's denial of benefits, because, given the nonadversarial

7  nature of the administrative process, competent legal representation of a claimant

8  during the process is not a prerequisite to the issuance of a valid administrative

9  decision.").  Thus, this claim cannot provide a basis for relief.

10             **2.    Plaintiff's Allegations of Bias Are Without Support**

11       Plaintiff argues that the ALJ was biased because, according to plaintiff, the

12  ALJ initially found plaintiff was disabled and then ultimately concluded he was

13  not.  P. Mem. at 1-2.   Plaintiff also suggests the ALJ withheld records from

14  persons evaluating plaintiff.  Reply at 2-3.

15       ALJs "are presumed to be unbiased."  *Rollins v. Massanari*, 261 F.3d 853,

16  857 (9th Cir. 2001).  This presumption may be "rebutted by a showing of conflict

17  of interest or some other specific reason for disqualification."  *Id.* at 858.  Here,

18  plaintiff offers nothing more than conclusory allegations of bias.  *See Sprewell v.*

19  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (the court is not

20  required to accept as true merely conclusory allegations).

21       Plaintiff makes two allegations to support his claim of bias.  First, plaintiff

22  alleges that the fact the ALJ initially concluded that he was disabled and then later

23  reached the opposite conclusion shows bias.  P. Mem. at 1-2.  This allegation is

24  unfounded.  Throughout the hearing, the ALJ exhibited no indication of his

25  inclinations.  Further, even assuming there was evidence the ALJ initially believed

26  that plaintiff was disabled, the ALJ reached his final conclusion after receiving

27  *new evidence*, which, as discussed *infra*, the ALJ properly considered.  Thus, even

28

1    if the ALJ did change his mind, that would not show he was biased.

2         Second, plaintiff alleges that the ALJ withheld his medical records from the

3    consultative examiners.  Reply at 2-3.  Again, plaintiff's allegations are baseless.

4    Plaintiff did not have any psychiatric treatment records prior to January 2010 and

5    thus there were none for Dr. Edward Ritvo, a consultative psychiatrist who

6    examined plaintiff on July 2, 2009, to review.  *See* AR at 283.  Similarly, Dr.

7    Shahram Jacobs, a consultative internist, did not review any medical records.  *Id.*

8    at 277.  There is no evidence that these records were available to Dr. Jacobs at the

9    time of the examination.  *Compare id*. at 239, 276 (records request sent on June

10   19, 2009, just ten days prior to Dr. Jacobs's examination).  As for Dr. Steven I.

11   Brawer, a consultative psychologist who examined plaintiff on September 24,

12   2010, he stated that he reviewed a "thick file of records" and cited some of the

13   records that he reviewed.  *Id*. at 376-77.  The fact that Dr. Brawer did not

14   specifically state that he reviewed plaintiff's psychiatric treatments notes does not

15   prove either that Dr. Brawer did not review them or that the ALJ purposefully

16   excluded them.  Dr. Brawer only cited examples of the records he reviewed and

17   did not state it was an inclusive list.  Given that Dr. Brawer specifically noted that

18   he reviewed Dr. Park's opinion, it can be reasonably assumed that he also

19   reviewed the supporting treatment notes.

20        Plaintiff has therefore failed to rebut the presumption against bias.

21        **3.    The ALJ Committed No Evidentiary Errors**

22        Plaintiff contends that the ALJ made several evidentiary errors.

23   Specifically, plaintiff alleges that the ALJ failed to notify plaintiff and seek input

24   as to the experts he intended to retain, did not allow plaintiff or his counsel to

25   review evidence submitted after the hearing, and failed to request and review

26   plaintiff's military record.  P. Mem. at 1-2.

27        An ALJ has a duty to fully develop the record.  *See Tonapetyan*, 242 F.3d at

28

8

1150.  "The ALJ may discharge this duty in several ways, including:  subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Id.*

Plaintiff's first contention is that the ALJ failed to notify plaintiff and allow his input as to which experts he should retain.  P. Mem. at 2.  It is the province of the ALJ to retain the experts, but a claimant may object to the selection.  *See* 20 C.F.R. §§ 404.1519, 416.919, 404.1519g, 416.919g, 404.1519j, 416.919j.  Here, plaintiff offers nothing more than a conclusory allegation that the ALJ did not notify his counsel as to the selection of the consultative examiners.  Thus, the court need not accept it as true.  Moreover, the ALJ allowed plaintiff's counsel to comment on or object to Dr. Brawer's opinion, which he did not.  AR at 200.

Second, plaintiff argues that the ALJ improperly requested additional evidence after the hearing and failed to provide that evidence to plaintiff for review.  P. Mem. at 2.  As discussed *supra*, the ALJ may keep the record open for the submission of additional evidence if the record is incomplete.  Here, after the hearing, the ALJ ordered an additional consultative psychological evaluation, which was conducted by Dr. Brawer on September 24, 2010.  AR at 375-82.  As just noted, the ALJ gave plaintiff's counsel an opportunity to comment on Dr. Brawer's report.  *Id.* at 200.  Subsequently, the ALJ retained the assistance of a VE, Howard J. Goldfarb.  *Id.* at 217-26.  The ALJ forwarded Goldfarb's interrogatory responses to plaintiff's counsel and asked counsel to comment on the responses, submit more evidence, or submit cross-interrogatories.  *Id*. at 228.  Plaintiff's counsel submitted a cross-interrogatory, and the VE responded.  *Id.* at 229, 231, 233.  The ALJ's retention of a consultative psychologist and VE were in compliance with his duty to develop the record.  Contrary to plaintiff's arguments, the ALJ provided the evidence to plaintiff's counsel and gave counsel an

1  opportunity to respond.

2         Finally, plaintiff argues that the ALJ had a duty to request and review

3  plaintiff's military record.  The ALJ's duty to develop the record applies only to

4  evidence relevant to his claim.  *See, e.g.*, *Humecky v. Astrue*, No. 07-1010, 2009

5  WL 799178, at *24 (E. D. Cal. Mar. 24, 2009) (ALJ has a duty to explore all

6  relevant facts) (*citing Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1991)).

7  Plaintiff served in the military in the early 1980s.  The ALJ accepted plaintiff's

8  allegation of PTSD resulting from the Beirut bombing in 1983.  *See* AR at 27.

9  Because plaintiff does not specify, it is unclear why the ALJ should have reviewed

10  plaintiff's military record and how doing so would have helped plaintiff's claims.

11  In short, plaintiff's evidentiary claims are without merit.

12         Accordingly, substantial evidence demonstrates that plaintiff received a fair

13  and unbiased hearing before an unbiased ALJ who fulfilled his duty to develop the

14  record.

15  **B.**    **The ALJ Properly Considered the Expert Opinion Testimony**

16         Although it is not entirely clear, plaintiff appears to argue that the ALJ erred

17  when he credited the opinions of the consultative examiners and gave less weight

18  to his treating physician.[6]  P. Mem. at 1-2.  The court disagrees.

19         In determining whether a claimant has a medically determinable

20  impairment, among the evidence the ALJ considers is medical evidence.  20

21  C.F.R. §§ 404.1527(b), 416.927(b).  In evaluating medical opinions, the

22  regulations distinguish among three types of physicians:  (1) treating physicians;

23

24  _____

25         [6]   Plaintiff also argues that the ALJ should not have given weight to the state
   agency physicians.  Reply at 1-2.  The ALJ relied on the opinions of several of the

26  examining physicians and gave less weight to the opinions of the state agency
   physicians.  *See* AR at 29-30.  Because the ALJ did not rely on the opinions of the

27  state agency opinions in reaching his determination, this court will not discuss

28  those opinions.

1   (2) examining physicians; and (3) non-examining physicians.[7]  20 C.F.R.

2   §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

3   1996) (as amended).  "Generally, a treating physician's opinion carries more

4   weight than an examining physician's, and an examining physician's opinion

5   carries more weight than a reviewing physician's."  *Holohan*, 246 F.3d at 1202; 20

6   C.F.R. §§ 404.1527(c)(1)-(2); 416.927(c)(1)-(2).  The opinion of the treating

7   physician is generally given the greatest weight because the treating physician is

8   employed to cure and has a greater opportunity to understand and observe a

9   claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v.*

10  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

11          Nevertheless, the ALJ is not bound by the opinion of the treating physician.

12  *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the

13  ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*,

14  81 F.3d at 830.  If the treating physician's opinion is contradicted by other

15  opinions, the ALJ must provide specific and legitimate reasons supported by

16  substantial evidence for rejecting it.  *Id.* at 830.  Likewise, the ALJ must provide

17  specific and legitimate reasons supported by substantial evidence in rejecting the

18  contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a

19  non-examining physician, standing alone, cannot constitute substantial evidence.

20  *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v.*

21  *Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d

22  813, 818 n.7 (9th Cir. 1993).

23

24

25  _____

26      [7]  Psychologists are considered acceptable medical sources whose opinions
    are accorded the same weight as physicians.  20 C.F.R. §§ 404.1513(a)(2),

27  416.913(a)(2).  Accordingly, for ease of reference, the court will refer to Dr.

28  Brawer as a physician.

1       **1.    Medical Opinions**

2              **Dr. Park**

3       Dr. Park, a psychiatrist at the Los Angeles County Department of Mental

4   Health, treated plaintiff from January 2010 through at least June 2010.  *See* AR at

5   319-20, 324, 326-31, 368-70.  Plaintiff's sessions with Dr. Park were primarily

6   telephonic and their purpose was to follow up on plaintiff's medication.  *See id.*

7   Jennifer Kim, an associate social worker, and Debbie Eshtiaghpour, a post-

8   doctoral intern, provided plaintiff with therapy sessions from January 2010

9   through April 2010 and coordinated with Dr. Park.  *See id.* at 316-43, 371-73.

10  During the sessions, Kim observed that plaintiff was oriented and alert, shook his

11  legs nervously, and was verbose.  *See, e.g., id*. at 317, 322, 325.  Dr. Park and Kim

12  diagnosed plaintiff with bipolar disorder and PTSD secondarily.  *Id.* at 332, 334.

13      On May 21, 2010, Dr. Park completed a Medical Source Statement

14  (Mental), in which he opined that plaintiff had moderate limitations with regard to

15  understanding and memory, sustained concentration and persistence, social

16  interaction, and adaptation.  *Id*. at 310-12.  Dr. Park also checked boxes indicating

17  that plaintiff would have a substantial loss of ability to:  understand, remember,

18  and carry out directions; make simple-work related decisions; respond

19  appropriately to supervisors and co-workers; and deal with changes in a routine

20  work setting.  *Id.* at 312.  Dr. Park listed excessive mood changes, anger, hearing

21  imagined voices, and confusion as findings that supported his opinion.  *Id.*

22             **Dr. Jacobs**

23      Dr. Shahram Jacobs, a consultative internist, examined plaintiff on June 29,

24  2009.  *Id*. at 276-80.  Dr. Jacobs did not review any medical records.  *Id*. at 277.

25  With respect to plaintiff's back, Dr. Jacobs observed that plaintiff had evidence of

26  muscle spasm in the right paraspinal muscles along the upper mid thoracic spine

27  with tenderness to palpation and tenderness on the left and right lateral rotation, as

28  well as left and right flexion of the lumbar spine.  *Id*. at 279.  Plaintiff's range of

motion, however, was normal. *Id.* Dr. Jacobs also took a thoracic spine x-ray and did not note any abnormalities. *See id.* at 280. With regard to plaintiff's wrists and hands, Dr. Jacobs observed that plaintiff had no evidence of tenderness to palpation of the wrists, Herbeden's nodes, or Bouchard's nodes. *Id*. at 279. Plaintiff had normal range of motion in the wrists. *Id.*

Based on his examination, Dr. Jacobs concluded that plaintiff did not have any abnormality of the hands and wrists, but found that there was evidence of muscle spasm in the thoracic spine with tenderness to palpation, as well as pain elicited on movement likely with thoracolumbar strain. *Id.* at 280. Dr. Jacobs opined that plaintiff may suffer from tension type headaches but he appeared comfortable during the examination. *Id.* Dr. Jacobs further opined that plaintiff: could lift/carry fifty pounds occasionally and twenty-five pounds frequently; could stand/walk/sit six hours in an eight-hour workday; had unlimited ability to push and pull in both the upper and lower extremities other than lift/carry; and was limited to frequent postural activities. *Id*.

### Dr. Ritvo

Dr. Edward Ritvo, a consultative psychiatrist, examined plaintiff on July 2, 2009. *Id.* at 283-288. Dr. Ritvo reviewed no medical records and did not conduct any tests. *See id.* Dr. Ritvo observed that plaintiff was, inter alia, pleasant, talkative, and able to volunteer information spontaneously. *Id*. at 285. Dr. Ritvo also observed that plaintiff had relevant and organized thought processes. *Id.* at 286. Dr. Ritvo noted that plaintiff had some ideas which were "quite unusual," but that they did not fit into a specific diagnosis. *Id.* at 287. As such, Dr. Ritvo diagnosed plaintiff with polysubstance abuse, in long-term remission, and moderate psychosocial stressors, and opined no impairments. *Id.* at 287-88.

### Dr. Brawer

Dr. Brawer examined plaintiff on September 24, 2010. *Id.* at 375-82. Dr. Brawer reviewed plaintiff's medical records and administered multiple tests. *See*

13

1   *id.* Dr. Brawer observed that plaintiff was euthymic, had clear speech, and had

2   adequate concentration. *Id*. at 378-79. Dr. Brawer diagnosed plaintiff with:

3   bipolar disorder; PTSD; polysubstance abuse, which was reported to be remission;

4   and low average range intellectual functioning. *Id*. at 381. Based on the test

5   results and observations, Dr. Brawer opined that plaintiff: would be able to

6   perform simple, repetitive tasks; could perform some detailed, varied, or complex

7   tasks; had a mildly diminished ability to sustain attention and concentration for

8   extended periods of time but demonstrated adequate attention during testing; and

9   displayed signs of mood instability and proneness to substance abuse/dependence

10  that may result in mild to moderate limitations in his ability to effectively manage

11  customary work stresses. *Id*. at 381-85. Dr. Brawer further opined that given

12  plaintiff's dysphoria, paranoia, and proneness to interpersonal conflict, plaintiff

13  may have mild to moderate limitations in sustaining cooperative relationships with

14  coworkers and supervisors and would function best in a semi-isolated

15  environment. *Id.* at 382, 384.

16          **2.     The ALJ's Findings**

17          The ALJ concluded that plaintiff had a severe combination of the

18  impairments of tension headaches, thoracolumbar strain, bipolar disorder, PTSD,

19  and polysubstance abuse. *Id*. at 27. In his RFC determination, the ALJ found that

20  plaintiff had the ability to perform medium work with the following non-

21  exertional limitations, plaintiff:  could frequently perform complex technical work;

22  could perform a full range of simple, routine, and repetitive work; was limited to

23  occasional contact with supervisors and the general public; and was limited to a

24  job with a medium stress level. *Id*. at 28-29. In reaching those determinations, the

25  ALJ gave great weight to the opinions of Dr. Jacobs and Dr. Brawer and less

26  weight to the opinions of Dr. Ritvo and Dr. Park. *Id.* at 29-31. The ALJ gave less

27  weight to Dr. Ritvo because he did not have medical records to review and he did

28  not cite as much relevant objective evidence as Dr. Brawer. *Id*. at 30. The ALJ

1   gave less weight to Dr. Park because his opinion "reflect[ed] advocacy." *Id.* at 31.

2   The ALJ found that Dr. Park's opinion was not supported by objective evidence or

3   the treatment records, which focused largely on plaintiff's discounted subjective

4   complaints. *Id*. Plaintiff appears to only find fault with the ALJ's acceptance of

5   Dr. Brawer's opinion and the rejection of Dr. Park's opinion.[8]

6          The ALJ properly relied on Dr. Brawer's opinion. Dr. Brawer's opinion

7   was based on an examination and review of medical records. Plaintiff offers no

8   reason to give Dr. Brawer's opinion less weight.

9          The ALJ also properly gave less weight to Dr. Park's opinion. One of the

10  reasons the ALJ gave for rejecting Dr. Park's opinion – that it reflected advocacy

11  rather than treatment by Dr. Park – was without merit. The ALJ took issue with

12  the fact that plaintiff's counsel solicited the opinion from Dr. Park. *See id.*

13  Plaintiff's counsel is entitled to solicit Dr. Park's opinion. Indeed, had he not, the

14  ALJ may have noted that the treating physician did not provide an opinion.

15  Nothing in the record suggests that Dr. Park was trying to "advocate" for plaintiff

16  rather than provide a neutral opinion.

17         Nevertheless, the ALJ cited other specific and legitimate reasons for

18  rejecting the opinion of Dr. Park. First, the ALJ found that Dr. Park's opinion is

19  not supported by objective evidence. AR at 31. The ALJ correctly noted that

20  plaintiff's records reflect that Dr. Park and his associates conducted no tests and

21  recorded few objective observations. *See, e.g., id.* at 322-23. The only objective

22  findings Dr. Park and his associates noted were that plaintiff was oriented and

23  ─────────────────

24         [8]   The only physician who offered an opinion concerning plaintiff's physical
    RFC was Dr. Jacobs. To the extent that plaintiff finds fault with Dr. Jacobs'
25  opinion, his only argument is that Dr. Jacobs did not review any medical records.
    Reply at 1. Plaintiff submitted few medical records, most of were irrelevant to
26  plaintiff's complaints. *See, e.g.,* AR at 257, 274-75 (discussing well visits and
    unrelated issues). The ALJ discussed the relevant records (spine and hand x-rays),
27  which supported Dr. Jacobs's opinion. *See id.* at 29, 260-61, 264.

28

1  alert, shook his legs nervously, and was verbose during sessions. *See, e.g., id*. at

2  317, 322, 325.

3       Second, the ALJ's finding that the treatment notes do not support Dr. Park's

4  opinion is also specific and legitimate. *See id.* at 31.  Dr. Park based his opinion

5  on plaintiff's excessive mood changes, anger, auditory hallucinations, and

6  confusion.  The treatment notes, however, do not reflect any objective

7  observations of those symptoms.  Instead, it was plaintiff who relayed information

8  concerning mood changes, anger, and hallucinations to Dr. Park and his

9  associates. *See, e.g., id.* at 322-35.  Thus, to the extent that Dr. Park based his

10  opinion on plaintiff's subjective complaints, the ALJ may reject it if plaintiff's

11  credibility is discounted. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.

12  1995) ("[A]n opinion of disability premised to a large extent upon the claimant's

13  own accounts of his symptoms and limitations may be disregarded, once those

14  complaints have themselves been properly discounted." ).  As discussed *infra*, the

15  ALJ properly discounted plaintiff's credibility.

16       In short, the ALJ properly considered the opinions of the treating and

17  examining physicians and provided specific and legitimate reasons supported by

18  substantial evidence for rejecting the opinion of Dr. Park.

19  **C.    The ALJ Properly Relied on the VE's Testimony**

20       Plaintiff contends that the vocational expert failed to consider all the

21  limitations, including his lack of a high school diploma and the California

22  Employment Development Department's ("EDD") finding that he was

23  unemployable.  P. Mem. at 1, 3.  The court disagrees.

24       At step five, Commissioner bears the burden to show that the claimant

25  retains the ability to perform other gainful activity. *Lounsbury v. Barnhart*, 468

26  F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not

27  disabled at step five, the Commissioner must provide evidence demonstrating that

28  other work exists in significant numbers in the national economy that the claimant

1  can perform, given his or her age, education, work experience, and RFC.  20

2  C.F.R. §§ 404.1512(f), 416.912(f).

3        The Commissioner may meet her step five burden either by reference to the

4  Medical-Vocational Guidelines at 20 C.F.R. part 404, Subpart P, Appendix 2 or by

5  relying on the testimony of a vocational expert and the Dictionary of Occupational

6  Titles ("DOT") "in evaluating whether the claimant is able to perform other work

7  in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990)

8  (citations omitted); *see Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001);

9  Social Security Ruling ("SSR") 83-12;[9] *see also* 20 C.F.R. §§ 404.1566(d)(1),

10  416.966(d)(1) (DOT is a source of reliable job information).  The DOT is the

11  rebuttable presumptive authority on job classifications.  *Johnson v. Shalala*, 60

12  F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a VE's testimony

13  regarding the requirements of a particular job without first inquiring whether the

14  testimony conflicts with the DOT, and if so, the reasons therefor.  *Massachi*, 486

15  F.3d at 1152-53 (discussing SSR 00-4p).  In order for an ALJ to accept a VE's

16  testimony that contradicts the DOT, the record must contain "'persuasive evidence

17  to support the deviation.'"  *Id.* at 1153 (*quoting Johnson*, 60 F.3d at 1435).

18  Evidence sufficient to permit such a deviation may be either specific findings of

19  fact regarding the claimant's residual functionality, or inferences drawn from the

20  context of the expert's testimony.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793

21  (9th Cir. 1997) (as amended).

22        Here, the ALJ propounded interrogatories to the VE.  AR at 218-26.  In

23  _____

24      [9]  "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies.  SSRs are binding on all

25  components of the SSA.  SSRs do not have the force of law.  However, because

26  they represent the Commissioner's interpretation of the agency's regulations, we give them some deference.  We will not defer to SSRs if they are inconsistent with

27  the statute or regulations."  *Holohan*, 246 F.3d at 1203 n.1 (internal citations

28  omitted).

1    response to a hypothetical person with plaintiff's RFC, the VE responded that such

2    person would be able to perform the jobs of hand packager, day worker, and

3    woodworking polisher. *Id*. at 223-24. Plaintiff's counsel also presented an

4    interrogatory, presenting a hypothetical person with plaintiff's alleged RFC but

5    also limited to: light work; simple, routine, and repetitive work; less than

6    occasional contact with supervisors; rare contact with co-workers; no contact with

7    the general public due to aggressive behavior and manic moods; and a maximum

8    stress level of three based on the ALJ's scale. *Id.* at 229. In response, the VE

9    stated that such hypothetical person would be able to perform the jobs of

10   housekeeper, jewelry preparer, and handwasher. *Id.* at 233.

11          The VE properly considered the hypotheticals and did not err. First, the VE

12   stated his responses did not conflict with the DOT (*id.* at 225), and plaintiff has

13   not identified a genuine conflict. Contrary to plaintiff's contention, none of the

14   identified jobs require a high school diploma. *See* DOT 920.587-018 (hand

15   packager), 301.687-014 (day worker), 761.684-026 (woodworking polisher). And

16   second, assuming the EDD determined that plaintiff was unemployable, such

17   determination is irrelevant to the VE's response. The VE only had a duty to

18   respond to the hypotheticals presented to him. It is the purview of the ALJ to

19   make the ultimate disability determination. 20 C.F.R. §§ 404.1527(d), 416.927(d).

20          The ALJ thus properly relied on the VE testimony in reaching his decision.

21   The VE considered all factors presented in the hypotheticals and his responses

22   were consistent with the DOT.

23   **D.     The ALJ Properly Discounted Plaintiff's Credibility**

24          Plaintiff argues that the ALJ improperly discounted his credibility. Reply at

25   2-3. Specifically, plaintiff suggests that the ALJ failed to provide clear and

26   convincing reasons for finding plaintiff less credible. *Id.* The court disagrees.

27          The ALJ must make specific credibility findings, supported by the record.

28   SSR 96-7p. To determine whether testimony concerning symptoms is credible, the

ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 32. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ discounted plaintiff's credibility here because: (1) the objective medical evidence failed to support his claims; (2) he sought little treatment; and (3) his daily activities were inconsistent with plaintiff's stated limitations. *Id.* Some of the ALJ's reasons were clear and convincing reasons supported by substantial evidence.

First, the ALJ correctly noted that the objective evidence does not support plaintiff's allegations. *See id.*; *see also Rollins*, 261 F.3d at 856-57 (lack of objective medicine supporting symptoms is one factor in evaluating credibility). Plaintiff performed adequately on the mental status examinations and tests. *See* AR at 285-87, 378-81. Plaintiff, among other things, was coherent, organized, and talkative, and displayed adequate attention. *See id.* at 285-87, 378-79. These

findings were consistent with observations during his therapy session.  *See, e.g.,*
*id*. at 317, 322, 325.

Second, the ALJ discounted plaintiff's credibility on the basis that he sought
little treatment for his mental impairment.  AR at 32.  The records reflect that
plaintiff first sought mental health treatment in January 2010.  *See id*. at 337-43.
He appears to have stopped attending therapy in the beginning of April 2010, but
continued his medication review sessions through at least June 2010.  *See id.* at
368, 371-73.  Persons with mental health impairments often do not seek treatment,
and thus the failure to seek treatment is not necessarily a clear and convincing
reason to discount their testimony.  *See Allen v. Comm'r*, No. 11-16628, 2012 WL
5857269, at *2 (9th Cir. Nov. 19, 2012) (The "[f]ailure to seek treatment is not a
substantial basis on which to conclude that a claimant's mental impairment is not
severe."); *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is common
knowledge that depression is one of the most underreported illnesses in the
country because those afflicted often do not recognize that their condition reflects
a potentially serious mental illness.").  Thus, although the ALJ was accurate in his
observation, plaintiff's limited treatment is not by itself a clear and convincing
reason.

Finally, the ALJ found that plaintiff's daily activities were inconsistent with
his testimony and written statements.  AR at 32.  The ALJ clarified that it was not
plaintiff's ability to perform "some normal daily activities" that caused him to find
plaintiff less credible, but rather the fact that the activities reflected that plaintiff
had greater capabilities than he testified to.  *Id.*  Inconsistency between a
claimant's alleged symptoms and her daily activities may be a clear and
convincing reason to find a claimant less credible.  *See Tommasetti*, 533 F.3d at
1039; *Bunnell*, 947 F.2d at 346-47.  Plaintiff testified that he had trouble handling
tools due to pain, could not focus on the routine of work, could not finish jobs,
was paranoid of all his workers, and was angry.  AR at 65-69.  But from plaintiff's

1   and his wife's function reports, it appears that plaintiff was able to spend

2   significant time on the computer – reading, chatting, blogging, or e-mailing –

3   which would be inconsistent with plaintiff's claim that he had trouble focusing.

4   *See id*. at 182, 190.  Similarly inconsistent was plaintiff's wife's statement that

5   plaintiff was able to follow written instructions well enough to complete whatever

6   project he was working on.  *Id*. at 191.  Plaintiff and his wife also stated that

7   plaintiff gets along well with neighbors, friends, and authority figures, and

8   participates in community organizations and meetings, which occur once or twice

9   a month.  *Id*. at 183, 191-92.  These interactions are inconsistent with plaintiff's

10  testimony of paranoia of his workers.  These inconsistencies suggest that plaintiff

11  had a better ability to concentrate and interact with others than he testified to and

12  were adequate to support the ALJ's finding.

13          Thus, the ALJ cited two clear and convincing reasons to discount plaintiff's

14  credibility.  Further, even if these reasons were insufficient by themselves, such

15  error would be harmless.  First, plaintiff made other inconsistent statements.  *See*

16  *Tommasetti*, 533 F.3d at 1939 (the ALJ may consider prior inconsistent

17  statements).  Plaintiff testified that he had auditory and visual hallucinations and

18  reported the same to Dr. Park and his associates.  *See, e.g.,* AR at 75, 321.  But

19  plaintiff denied having recent auditory and visual hallucinations to Dr. Ritvo and

20  any auditory hallucinations to Dr. Brawer.  *See id.* at 286, 378.  Second, assuming

21  plaintiff's alleged limitations are as described by his counsel in the cross-

22  interrogatory to the VE, the VE responded that even given those limitations,

23  plaintiff would still be able to perform other work , including housekeeper, jewelry

24  preparer, and handwasher.  *Id.* at 233.

25          Accordingly, the ALJ provided clear and convincing reasons supported by

26  substantial evidence for finding plaintiff less credible.  And in any event, even if

27  plaintiff's limitations were as he alleged, pursuant to the VE's response, he would

28  still be able to perform work.

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered
AFFIRMING the decision of the Commissioner denying benefits, and dismissing
this action with prejudice.

DATED: July 28, 2014

_____
SHERI PYM
United States Magistrate Judge